JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Gwen Maguire, appeals the trial court granting plaintiff-appellee, Gerard Iammarino's motion for directed verdict on the issue of defendant's liability. Defendant also appeals the subsequent jury verdict in which plaintiff was awarded $147,057.14 plus costs against defendant and codefendant, Farmers Insurance Company of Columbus, Inc. ("Farmers").[1] Also included in this appeal are defendant's additional claims relating to the trial court denying her motions for new trial. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In his suit against defendant and Farmers, plaintiff sought compensation for back injuries and lost wages resulting from a motor vehicle collision caused by defendant's negligence.
 {¶ 3} On November 19, 1996, plaintiff, a resident of Gates Mills Towers apartments in Mayfield Heights, was traveling south on Gates Mills Towers Boulevard toward Mayfield Road and away from the apartments. Gates Mills Towers Boulevard is a two-way access road providing ingress and egress to the apartment complex from Mayfield Road. Separating the north and southbound traffic on the boulevard is a median strip in which shrubbery is planted.
 {¶ 4} At about the same time plaintiff was driving south from the apartments, defendant[2] was driving north on the other side of the median towards the apartments.[3] Defendant was on her way to visit an aunt who lived in the building on the west side of the boulevard. In order to park her vehicle, defendant had to cross over the boulevard's southbound lane. As she began to make her approach to turn left into the parking lot, her view of oncoming traffic was obstructed because the median strip was piled high with mounds of snow from a recent snowstorm.
 {¶ 5} Defendant testified that because she "didn't see anything coming the other direction at that point, where I could see that it was a relatively safe assumption that there was nobody there." Tr. 316. Defendant does not recall whether she had a stop sign or whether she came to a full-stop before turning into the lane of southbound traffic. She also does not remember whether she applied her brakes at any point before the impact between the front of her vehicle and the side of plaintiff's car. Defendant did testify that she and the plaintiff "hit each other pretty hard." Tr. 316. Plaintiff testified that upon impact with defendant's vehicle, his air bags deployed and some of the car's windows shattered. There is no evidence plaintiff was speeding.
 {¶ 6} At trial, plaintiff moved for and was granted a directed verdict on defendant's liability. Afterwards, the jury was left to decide the issue of plaintiff's claim for compensatory damages.
 {¶ 7} The jury returned a verdict in favor of plaintiff against both defendants in the amount of $147,057.14 plus costs. Defendant appeals and presents six assignments of error for our review.
 {¶ 8} "I. The Trial Court Erred In Granting Plaintiff/Appellee Gerard Iammarino's Motion For Directed Verdict On Liability."
 {¶ 9} Defendant argues that the trial court erred in granting plaintiff's motion for directed verdict because there remains an issue of fact of whether defendant exercised due care before turning left into the path of plaintiff's vehicle.
 {¶ 10} Plaintiff, on the other hand, at trial and here on appeal, contends that he had a statutory right to proceed uninterrupted in his lane of travel and that defendant negligently violated his right-of-way by making a left turn in front of him in violation of R.C. 4511.42.
 {¶ 11} Civ.R. 50(A)(4) governs the standard for granting or denying a motion for directed verdict: "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 12} In deciding the merits of a motion pursuant to Civ.R. 50(A)(4), courts are not permitted to weigh the evidence but must determine whether reasonable minds could reach only one conclusion based on the evidence. See, Carnovale v. Jackson (Aug. 7, 1997), Cuyahoga App. No. 71289.
 {¶ 13} In Ohio, every driver of a motor vehicle has a statutory duty to yield the right-of-way to oncoming traffic. That duty is embodied in R.C. 4511.42, which states that "the operator of a vehicle * * * intending to turn to the left within an intersection * * * shall yield the right of way to any vehicle * * * approaching from the opposite direction, whenever the approaching vehicle * * * is within the intersection or so close to the intersection * * * as to constitute an immediate hazard."
 {¶ 14} R.C. 4511.01(UU)(1)defines "right of way" as "the right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle * * * approaching from a different direction into its or the individual's path."
 {¶ 15} In the case at bar, the testimony at trial supported the finding that defendant did not yield to plaintiff's vehicle, which was proceeding in a lawful manner. As Mr. Mulvihill said in explaining his motion for directed verdict on liability, "There is no question that Mr. Iammarino was proceeding uninterruptedly in a straight direction on a road with no traffic control devices when Miss Maguire turned into his lane of travel.
 {¶ 16} "Her testimony clearly is that she has no recollection of taking any safety precautions, but just turned right into him. Pictures reflect and the testimony was that she hit his front wheel, and there should be no issue as to liability." Tr. 321.
 {¶ 17} During trial, defendant admitted that she did not see anyone coming in the other direction because she could not see over the snow stacked in the median. Despite her inability to see oncoming traffic, defendant, nonetheless, proceeded to turn left into the path of plaintiff's vehicle. There is no evidence that plaintiff was proceeding in his course of travel in anything but a lawful manner.
 {¶ 18} As a result of this evidence, we conclude that reasonable minds could reach but one conclusion: that defendant turned left without yielding the right of way to traffic approaching from the opposite direction. The trial court did not err, therefore, in granting plaintiff's motion for directed verdict on the issue of defendant's liability. Defendant's first assignment of error is overruled.
 {¶ 19} "II. The Trial Court Erred In Denying Defendant/appellant Gwen Maguire's Motion For New Trial Where The Damage Award Granted In Favor Of Plaintiff/appellee Gerard Iammarino Was Excessive And Given Under The Influence Of Passion And Prejudice In Accordance With Ohio Civil Rule 59(A)(4).
 {¶ 20} "III. The Trial Court Erred In Denying Defendant/appellant Gwen Maguire's Motion For New Trial On The Grounds Of Ohio Civil Rule 59(A)(6) Where The Jury Verdict Was Against The Manifest Weight Of The Evidence."
 {¶ 21} In these two assignments of error, defendant argues the jury's damage award of $147,057.14 is excessive and not supported by the manifest weight of the evidence presented at trial. Because both claimed errors require a review of the entire trial record, we address them together.
 {¶ 22} Civ.R. 59(A), sets forth specific grounds upon which a new trial may be granted, such as the following: "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice; * * * "(6) The judgment is not sustained by the weight of the evidence * * *." Civ.R. 59(A)(4) (6); See Kolomichuk v. Grega
(Sept. 20, 2001), Cuyahoga App. No. 78870.
 {¶ 23} In Ohio, "it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive." Moskovitz v. Mt. Sinai Medical Ctr. (1994),69 Ohio St.3d 638 at syllabus; Kolomichuk, supra. To support a finding of passion or prejudice, pursuant to Civ.R. 59(A)(4), "it must be demonstrated that the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities."Kolomichuk, supra, citing Jeanne v. Hawkes Hosp. of Mt. Carmel (1991),74 Ohio App.3d 246, 257.
 {¶ 24} Pursuant to Civ.R. 59(A)(6), a new trial should be granted only when the jury's verdict is not supported by competent, substantial, and credible evidence. Kolomichuk, supra. On appeal the propriety of the trial court's decision based upon the weight of the evidence is reviewed under an abuse of discretion standard. Rohde v. Farmer (1970),23 Ohio St.2d 82, paragraph one of the syllabus. Further, a trial judge is in the best position to determine whether an award is manifestly excessive or influenced by passion and prejudice. See, generally,Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36.
 {¶ 25} In the case at bar, under either Civ.R. 59(A)(4) or (6), we do not find that the jury's award is either excessive or unsupported by competent, substantial, or credible evidence. Plaintiff admitted that prior to the accident with defendant, he had suffered from lower back problems caused by his employment, which required him to move large appliances. Plaintiff testified that after the accident, however, his lower back pain was quite different. He stated that since the accident he has had severe and continual pain. After years of physical therapy, the only relief he said he could obtain was from the epidural pain blocks administered by his physician. Since the accident he has been severely limited in his activities including participating in various sporting events. Plaintiff testified that before the accident he never missed a day of work or a softball game because of his back. After the accident in 1996, however, he could not work for months, and, when he did return to his job, he could work only part-time, his lost wages amounting to $56,000. Tr. 156. On the whole, it was not unreasonable for the jury to find his testimony credible.
 {¶ 26} Plaintiff's physician, Dr. Collis, a neurosurgeon, provided support for plaintiff's description of his pains. Describing the nature of the injuries plaintiff sustained in the accident, Dr. Collis said: "[m]y diagnosis was * * * that he had had a lumbar strain with bulging discs, a cervical strain with bulging discs. He had had prior existing osteoarthritis, that's the technical name for arthritic discs, and that all of these discs and vertebrae had been aggravated by that automobile accident the year before."
 {¶ 27} Defendant argued, on the other hand, that most of plaintiff's back problems predate the accident. Testifying for defendant, Dr. Howard Tucker stated that plaintiff's injuries were merely soft tissue injuries that should have resolved within months of the accident. Dr. Tucker claimed plaintiff's medical bills, which amount to approximately $66,000, were excessive and the result of unnecessary treatment. Defendant also argued that plaintiff's lost wage claim is excessive.
 {¶ 28} The verdict can be easily reconciled with the undisputed evidence in the case.
 {¶ 29} The record before us does not reflect any evidence that the jury was wrongfully influenced in returning its award or that the award was so manifestly excessive that it was the product of passion and prejudice.
 {¶ 30} First, we reject defendant's claim that the testimony of its expert physician was unrebutted and, therefore, dispositive of plaintiff's claims about his medical expenses and resulting lost wages. Even though defendant's expert, Dr. Tucker, implied that plaintiff's injuries were exaggerated and unrelated to any degenerative disc problems, Dr. Tucker conceded that he was not a spine specialist and his examination of plaintiff lasted only about twenty minutes. The jury obviously found plaintiff's evidence more credible than that of the defendant.
 {¶ 31} Of the jury's award, $122,000 compensates plaintiff fully for his medical bills and lost wages. The remaining amount of $25,000 is for the pain and suffering plaintiff endured since the accident in 1996. Plaintiff testified at length about all his documented medical bills, amounting to $66,057.14 (Plaintiff's Ex. 3). He also explained his inability to return to work for several months after the accident and that, when he did return in 1997, he could work only part time. As a direct result of the injuries he suffered, he said, he lost $56,000 in wages from 1997 to 1999.[4]
 {¶ 32} We also reject defendant's argument that comments by plaintiff's counsel about plaintiff's personal history, including comments about his deceased wife and his mother's cancer, inflamed the jury with sympathy so that they would return an excessive verdict. First, we note that defendant failed to object during the proceedings below and thus has waived this argument. Second, this testimony was justified because plaintiff's loss of his first wife explained issues relating to his admitted depression, which the defense, not the plaintiff, made part of the defense's case. Moreover, testimony that plaintiff does not work, but instead cares for his mother, who has cancer, provided an explanation to the jury about why he was not working at the time of trial, although his condition had improved, and that his current unemployment was not related to this case. Because we find no error in either area of this elicited testimony, we cannot conclude that any of plaintiff's comments or testimony imbued the jury with passion and prejudice.
 {¶ 33} We defer to the jury's determination and conclude that the jury's $147,057.14 award is supported by competent, substantial, and credible evidence. Accordingly, the trial court did not abuse its discretion in denying defendant's motions for new trial. Defendant's second and third assignments of error are overruled.
 {¶ 34} "IV. THAT THEY WERE GROUNDS FOR A NEW TRIAL.
 {¶ 35} "V. The Trial Court Erred In Not Granting Defendant Gwen Maguire A Mistrial When Plaintiff/appellee's Counsel Made Improper Statements That Were So Prejudicial Plaintiff's Counsel Inappropriately Questioned The Proposed Jury Panel About Recent Newspaper Articles Discussing Allstate Insurance Company And Their Claims Processing."
 {¶ 36} In these two assignments of error, defendant argues plaintiff's counsel made improper and prejudicial remarks during voir dire and closing argument. Specifically, defendant complains that plaintiff made references to insurance.
 {¶ 37} During voir dire, plaintiff posed the following questions to the potential jurors:
 {¶ 38} "MR. MULVIHILL: Has anybody-I'll just ask if anybody, including the first few over there, worked for an insurance company, anybody have any experience in handling insurance claims, other than those people who themselves have been involved in accidents? Anybody pick-up Scene Magazine last week; you know, the magazine that's on the street; had a big article on Allstate and Allstate's claim handling process?
 {¶ 39} "MR. CALLOW: Objection, your honor.
 {¶ 40} "THE COURT: Sustained.
 {¶ 41} MR. MULVIHILL: Okay. Anybody have any experience at all with the insurance industry? Okay.
 {¶ 42} "* * *
 {¶ 43} "MR. MULVIHILL: And you filed an insurance claim?
 {¶ 44} "JUROR NO. 6: Filed an insurance claim. Looked like it wasn't gonna go anywhere, and then their insurance company took care of it.
 {¶ 45} "MR. MULVIHILL: Have you ever had any personal experience with insurance adjusters in your practice as a lawyer?
 {¶ 46} "JUROR NO. 6: Not that I'm thinking of, no.
 {¶ 47} "* * *
 {¶ 48} "MR. MULVIHILL: Okay. Has anybody ever had an accident-I'm going to ask this for the whole group before we get to you-where there was an injury that they didn't file a claim, or didn't file an insurance claim, or actually come to court. Yeah.
 {¶ 49} "JUROR NO. 4: Let's see. There was one about, almost two years ago, where I was in an accident driving on Euclid Avenue near University Circle. * * *.
 {¶ 50} "* * *
 {¶ 51} "And given the fact that the car I had was old, nothing further took place, we just-we made the report, and assumed the insurance companies took care of the rest. We left it at that point.
 {¶ 52} "* * *
 {¶ 53} "MR. MULVIHILL: Okay. Been a lot of discussion earlier about some motor vehicle accidents that people have been involved in. Have you ever filed any kind of insurance claim before?
 {¶ 54} "JUROR NO. 10: No, sir.
 {¶ 55} "* * *
 {¶ 56} "MR. MULVIHILL: Okay. You had mentioned that you were in an accident and had — was that an insurance claim?
 {¶ 57} "JUROR NO. 12: Yes.
 {¶ 58} "* * *
 {¶ 59} "MR. MULVIHILL: Okay. And you didn't have to go to court with that? It was able to be resolved outside?
 {¶ 60} "JUROR NO. 12: Resolved outside, yes." Tr. 21-22, 34, 37, 67, 79-80.
 {¶ 61} Even though defendant points to all the questions about insurance during voir dire, the record reveals that defendant objected only to a reference about a recent magazine article in a local paper about the claims processing practices of Allstate Insurance company. This single objection, moreover, was sustained. Tr. 21-22. Later, after the jury had been selected, defendant moved for a mistrial and cited the Allstate references by plaintiff's counsel. That motion was denied. Tr. 84-85. Plaintiff's counsel never suggested defendant was insured by Allstate when he asked the jury whether any of them had seen the Allstate article.
 {¶ 62} "A jury is presumed to follow the instructions given to it by the trial judge." State v. Twyford (2002), 94 Ohio St.3d 340; 2002 Ohio 894; 763 N.E.2d 122. In the case at bar, defendant's objection to the Allstate reference was sustained. Further, because defendant failed to object to any of the other references to insurance, we review those references pursuant to a plain-error standard. However, "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Pesek v. UniversityNeurologists Ass'n, (2000), 87 Ohio St.3d 495, 505. Moreover, "the extent to which plaintiff's counsel will be permitted to propound `the usual' insurance questions on voir dire to a panel of prospective jurors is a matter within the sound discretion of the trial court." Moore v.Reyes (Oct. 2, 1975), Cuyahoga App. No. 33647, 1975 Ohio App. LEXIS 6646.
 {¶ 63} As explained by the Ohio Supreme Court in Krupp v. Poor
(1970), 24 Ohio St.2d 123: "The purpose of the examination of a prospective juror upon his voir dire is to determine whether he has both the statutory qualification of a juror and is free from bias or prejudice for or against either litigant." Krupp, supra, citing paragraph one of the syllabus of Pavilonis v. Valentine (1929), 120 Ohio St. 154.
 {¶ 64} Because one of the primary goals of voir dire is to allow the parties to explore the potential biases of prospective jurors, counsel is given reasonable latitude during the examination. With each case, questions will vary depending upon the circumstances and parties involved.
 {¶ 65} In the case at bar, there is no plain error because the voir dire panel knew that one of the parties in the case was an insurance company. The attorney for co-defendant, Farmers Insurance, identified herself and her client in open court and then proceeded to ask the prospective jurors questions about insurance. Tr. 54-55. Defendant never objected to any of these questions.
 {¶ 66} On the record before us, we do not conclude that plaintiff's questions about and/or references to insurance, when the jury knew one of the parties was an insurance company, in any way affected the fairness, integrity, or the legitimacy of the proceedings. Accordingly, the trial court properly exercised its discretion in allowing the questions from plaintiff.
 {¶ 67} Next, defendant claims that certain comments by plaintiff's counsel during closing argument were prejudicial. According to defendant, plaintiff's counsel during closing implied that defendant's attorney intimidated the witnesses; that Farmers' attorney did not tell the truth; and that defense counsel's references to plaintiff's depression were meant to humiliate him.
 {¶ 68} As noted in Pang v. Minch (1990), 53 Ohio St.3d 186, ¶ 3 of syllabus: "Great latitude is afforded counsel in the presentation of closing argument to the jury. Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence presented by the advocate. The assessment of whether these bounds are exceeded is, in the first instance, a discretionary function of the trial court, and such determination is not to be reversed on appeal absent an abuse of discretion."
 {¶ 69} In the case at bar, the record contradicts defendant's claims. The transcript of plaintiff's closing argument does not contain specific page references to the comments defendant describes as required by App.R. 16(D)[5]. Since the comments defendant refers to are not separately stated, we do not need to consider this assignment of error.State v. Wilson, (Mar. 8, 2001), Cuyahoga App. No. 77758.
 {¶ 70} Moreover, having reviewed the transcript, we do not find any part of plaintiff's closing comments to be inappropriate or prejudicial. Accordingly, the trial court did not abuse its discretion in allowing plaintiff the latitude to which he was entitled during his closing argument. Defendant's fourth and fifth assignments of error are overruled.
Judgment affirmed.
ANNE L. KILBANE, P.J., AND FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] Farmer's is Iammarino's automobile liability carrier from which he was seeking underinsurance coverage.
[2] Defendant's testimony was presented by deposition read into the record.
[3] Both plaintiff and defendant testified they were traveling on the boulevard at a speed between 5 to 10 miles per hour.
[4] Plaintiff had returned to full-time employment by the year 2000 and he is not, therefore, claiming any lost wages for that year or the year 2001.
[5] App.R. 16(D)) states: "References in the briefs to the record shall be to the pages of the parts of the record involved; * * * If reference is made to evidence, the admissibility of which is in controversy, reference shall be made to the pages of the transcript at which the evidence was identified, offered, and received or rejected."